# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

KELLER TRANSPORT, INC.,

                      CV 11-174-M-JCL

         Plaintiff,

     vs.

                      ORDER

WAGNER ENTERPRISES, LLC,

         Defendant.

_____

      This action has its genesis in an environmental contamination that resulted from a gasoline spill that occurred when a fuel tanker truck overturned on Montana State Highway 35 in close proximity to Flathead Lake, Lake County, Montana.  The fuel tanker was owned by — and operated by an employee of — Defendant Wagner Enterprises, LLC (Wagner).  Both the tanker and employee were under lease to Plaintiff Keller Transport, Inc. (Keller).  Keller commenced this action seeking contribution from Wagner for damages caused by the gasoline spill, including past and future cleanup costs.

      The matter is presently before the Court upon the following motions of Wagner:  (1) Fed. R. Civ. P. 12(b)(6) motion to dismiss; (2) motion requesting dismissal of Keller's claim for contribution advanced under the Oil Pollution Act

at 33 U.S.C. § 2709 due to Keller's failure to assert the claim in an earlier lawsuit now pending in state court; and alternatively (3) motion for an order staying this case pending resolution of the referenced prior state court action.  For the reasons discussed, the Court grants the Rule 12(b)(6) motion in part, and denies the balance of Wagner's motions.

## I.    BACKGROUND

On December 1, 2007, Keller and Wagner entered a lease agreement whereby Wagner leased equipment and employees to Keller for use in transporting fuel.  Pursuant to that agreement, Wagner was transporting gasoline on April 2, 2008, along Highway 35 bordering Flathead Lake when the second of two tandem trailers overturned, spilling over 6,000 gallons of gasoline on the highway and adjoining land.  Most of the spilled fuel seeped into the ground and migrated onto private land and the shoreline of Flathead Lake.

The United States Environmental Protection Agency (EPA) issued an administrative order directing Keller to complete the fuel cleanup at the spill site in accordance with an EPA-approved cleanup plan.  After $5 million of available insurance proceeds were exhausted in the cleanup, Keller began, and continues to pay for cleanup and mitigation activities at the site.

In January of 2009, several homeowners impacted by the gasoline spill filed

a lawsuit in the Twentieth Judicial District Court, Lake County, Montana, seeking

compensation for removal costs and damages they sustained as a result of the fuel

spill.  Both Keller and Wagner are named as defendants in that pending lawsuit.

Keller states it reached a settlement agreement with those homeowners in which

Keller agreed to continue with the cleanup and mitigation activities pursuant to the

EPA's order.

Keller states it has thus far incurred over $300,000 in cleanup and

mitigation costs.  Keller anticipates continuing to incur costs associated with the

fuel spill for ten more years, and it expects the EPA will eventually impose a fine

against it in the amount of approximately $98,000.

Keller contends Wagner, as owner and operator of the tanker, is jointly

liable for damages and cleanup costs resulting from the spill.  But according to

Keller, Wagner refuses to contribute to the cleanup costs.

Keller commenced this action on December 29, 2011.  On February 28,

2012, Wagner filed the various motions now before the court.  In response, Keller

moved for leave to file an amended complaint to cure some of the deficiencies

identified in Wagner's motions.  Upon Wagner's stipulation to allow Keller to file

an amended complaint, the Court granted Keller's motion, and Keller filed its First

Amended Complaint on April 3, 2012.[1]

Keller's amended pleading advances claims against Wagner under federal law seeking to obtain compensation from Wagner for the damages and costs Keller has had to pay as a result of the fuel spill.  Keller asserts claims under the Clean Water Act, 33 U.S.C. § 1251 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., the Oil Pollution Act, 33 U.S.C. § 2701 et seq., and federal common law.  Keller also requests injunctive relief.

The Court will address the merits of Wagner's motions based on Keller's claims as amended and pled in its First Amended Complaint.

## II.   DISCUSSION

### A.   Wagner's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

#### 1.   Applicable Law

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

---

[1]On May 4, 2012, Keller again moved for leave to file another amended complaint to present claims against Wagner under Montana law.  The Court will address that motion by separate order.

*Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief."  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  The court must accept all factual allegations in the complaint as true and construe the pleading in the light most favorable to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### 2.     Oil Pollution Act — Subrogation

Wagner moves to dismiss Keller's claim for subrogation under the Oil Pollution Act at 33 U.S.C. § 2715(a).  In response, Keller initially represented that it would dismiss that subrogation claim without prejudice, and it conceded that any subrogation right it may have has not yet arisen.  Dkt. 24 at 2 n.1.  Consequently, Keller did not present any arguments in opposition to Wagner's motion to dismiss this claim.  Notwithstanding, Keller continues to assert a claim for subrogation under 33 U.S.C. § 2715(a) in its First Amended Complaint.  Dkt. 32 at ¶ 37.  For the reasons discussed, Keller's allegations fail to state a claim for subrogation under section 2715, and Wagner's motion is well-taken.

The subrogation provision of the Oil Pollution Act states as follows:

(a) In general

> Any person, including the Fund, who pays compensation pursuant to this Act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law.

33 U.S.C. § 2715(a). A "claimant" under the Oil Pollution Act is "any person or government who presents a claim for compensation under" the Act, and a "claim" is "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident[.]" 33 U.S.C. § 2701(3) and (4).

The foregoing statutory structure requires that a responsible party must first pay a claimant's claim before the party is "subrogated to all rights, claims, and causes of action that the claimant has under any other law." *See Seaboats, Inc. v. Alex C Corp.*, 2003 WL 203078, *1 and 8 (D. Mass. 2003) (permitting a subrogation claim under 33 U.S.C. § 2715(a) for damages the responsible party actually paid to claimants); and *National Shipping Co. of Saudi Arabia v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436, 1446 n.4 (E.D. Va. 1996) (noting that 33 U.S.C. § 2715(a) limits subrogation to only those amounts paid to claimants).

Here, Keller's allegations are insufficient to state a claim for subrogation under 33 U.S.C. § 2715(a). The Court recognizes Keller's allegations assert that it has incurred cleanup and removal costs stemming from the gasoline spill, that it has been "held responsible" through the EPA Order for "compensation to claimants" under the Oil Pollution Act, and that the EPA has paid cleanup costs

out of the Oil Pollution Act Fund.  Keller also alleges that both it and Wagner are jointly liable for those costs and damages under the Oil Pollution Act at 33 U.S.C. § 2702(a).  But conspicuously absent is any assertion that a particular claimant submitted a claim that was paid by Keller.  In fact, Keller has conceded its subrogation rights have not ripened.  Absent allegations that it has actually compensated a claimant, Keller's allegations fail to state a subrogation claim.  *See Texas Trading and Transportation, Inc. v. Laine Construction Co., Inc.*, 1998 WL 814615, *5 (E.D. La. 1998) (granting Fed. R. Civ. P. 12(b)(6) motion dismissing subrogation claim under 33 U.S.C. § 2715(a) where plaintiff did not allege that it actually paid money to any claimant).  Therefore, Wagner's motion is granted in this respect.  Keller may, of course, seek to amend its complaint in the event it makes payment to any claimant under the Act.

### 3.   Resource Conservation and Recovery Act

#### a.   Contribution

Wagner moves to dismiss Keller's claim for contribution originally pled under the Resource Conservation and Recovery Act at 42 U.S.C. § 6972(a), arguing section 6972(a) does not provide a cause of action for contribution.

In response, Keller concedes the statutory language in 42 U.S.C. § 6972(a)(1)(B) does not provide a cause of action for contribution as pled in its

7

original complaint.  In its First Amended Complaint, however, Keller turns to 42

U.S.C. § 6972(f) to support its claim for contribution from Wagner.  But Keller

fares no better.

Section 6972(f) states as follows:

(f) Other rights preserved

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or requirement relating to the management of solid waste or hazardous waste, or to seek any other relief (including relief against the Administrator or a State agency).

42 U.S.C. § 6972(f).

Thus, section 6972(f) preserves a suit for contribution available under some

other law.  Keller's amended complaint advances a cause of action under 42

U.S.C. § 6972(f) predicated upon its right to contribution under both the Oil

Pollution Act and federal common law.  Keller's analysis, however, is incorrect.

But Keller concedes there exists no express or implied right to contribution

under the Resource Conservation and Recovery Act.  *Tyco Thermal Controls LLC*

*v. Redwood Industrials*, 2010 WL 3211926, *11-12 (N.D. Cal. 2010) (citing

*Meghrig v. KFC Western, Inc.*, 516 U.S. 479 (1996)), *Furrer v. Brown*, 62 F.3d

1092 (8th Cir. 1995), *United States v. Domestic Industries, Inc.*, 32 F. Supp. 2d 855

(E.D. Va. 1999), and *Davenport v. Neely*, 7 F. Supp. 2d 1219 (M.D. Ala. 1998)).

Instead, the Resource Conservation and Recovery Act at 42 U.S.C. § 6972(f)

merely preserves rights to contribution that may exist under other laws. *Tyco*

*Thermal Controls*, 2010 WL 3211926 at 12 n.11. Consequently, Wagner's motion

is properly granted in this respect, and Keller's asserted cause of action for

contribution under 42 U.S.C. § 6972(f) is dismissed.

Wagner moves for an award of its attorneys' fees under authority of Fed. R.

Civ. P. 41(d) on the grounds that Keller voluntarily dismissed its contribution

claim under the Resource Conservation and Recovery Act, but then reasserted the

same claim in its First Amended Complaint.

The procedural rule on which Wagner relies in support of its request for

attorneys' fees provides as follows:

> **(d) Costs of a Previously Dismissed Action.** If a plaintiff who previously
> dismissed an action in any court files an action based on or including the
> same claim against the same defendant, the court:
>
>> (1) may order the plaintiff to pay all or part of the costs of that
>> previous action; and
>>
>> (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d).

In response to Wagner's Rule 12(b)(6) motion seeking dismissal of Keller's

Resource Conservation and Recovery Act contribution claim, Keller pled the

following statement in its First Amended Complaint:

9

COUNT 2:  CONTRIBUTION UNDER RCRA

39.  Keller dismisses its initial RCRA contribution claim without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A).

Dkt. 32 at 8-9.  As noted above, Keller's "initial RCRA contribution claim" was advanced under authority of 42 U.S.C. § 6972(a).  Dkt. 1 at ¶ 36.  Based on the conceded defects in that claim, Keller has now pled its claim for contribution under authority of 42 U.S.C. § 6972(f).  That claim was not pled in Keller's original Complaint.  Thus, in view of the substantive differences between section 6972(f), discussed above, and the injunctive relief available under 6972(a), discussed below, the Court finds that Keller has not re-filed a new action against Wagner "based on or including the same claim" that Keller had agreed to dismiss.  Therefore, the Court concludes Wagner is not entitled to relief under Fed. R. Civ. P. 41(d).

## b.    **Injunctive Relief**

Keller seeks affirmative injunctive relief against Wagner under the Resource Conservation and Recovery Act at 42 U.S.C. § 6972(a).  Wagner argues the claim for injunctive relief is both insufficient and moot in view of the cleanup activities currently being performed by Keller.  The Court disagrees.

The Resource Conservation and Recovery Act provides injunctive relief at 42 U.S.C. § 6972(a).  *Tyco Thermal Controls LLC v. Redwood Industrials*, 2010

WL 3211926, *16 (N.D. Cal. 2010).  Section 6972(a) authorizes a civil action to either (1) enforce a regulation that a person or entity is violating, (2) restrain a person who has contributed to the transportation or handling of hazardous waste, or (3) require a person to take certain remedial action as necessary.  42 U.S.C. § 6972(a).  *See also Tyco Thermal Controls*, 2010 WL 3211926 at 16.  The relief available is prospective only.  *Id*. at *18.  Here, Keller requests injunctive relief requiring Wagner to undertake cleanup activities.

There exists a fine line between a cognizable claim for injunctive relief under the Resource Conservation and Recovery Act, and an impermissible claim for injunctive relief which, in substance, seeks only recovery of cleanup costs and damages.  Since the Act undisputedly does not provide a remedy for recovery of damages and cleanup costs, it "does not allow a plaintiff to recover any costs for remediation substantially in place at the time of suit."  *Tyco Thermal Controls*, 2010 WL 3211926 at 19 (quotation and citation omitted).  Thus, the Act does not permit recovery of, or reimbursement for present and future costs of established remediation activities that are in place and taking place, because those costs can only be characterized as damages that are not recoverable under the Act.  *Id*.

In contrast, however, a party can obtain affirmative injunctive relief under the Resource Conservation and Recovery Act "to force appropriate parties to clean

up contamination." *Tyco Thermal Controls*, 2010 WL 3211926 at 19.  Even

where an approved remediation plan exists, and remediation activities are taking

place pursuant to that plan, a party may still advance a claim under the Act to

require a defendant to install additional remediation systems, or to perform

remediation activities that the original party has not yet undertaken.  *Id*. at 19

(quoting *ABB Industrial Systems, Inc. v. Prime Technology, Inc.*, 32 F. Supp. 2d

38, 41-42 (D. Conn. 1998)).  Alternatively, a party could seek affirmative

injunctive relief under the Resource Conservation and Recovery Act requiring a

defendant to completely take over responsibility for continuing and completing

remediation activities that have already commenced.  *Id*.

The Court finds that Keller has sufficiently pled a claim for affirmative

injunctive relief under the Resource Conservation and Recovery Act.  Keller

alleges the gasoline spill currently presents an ongoing imminent and substantial

threat to health or the environment, and that Wagner is obligated to clean up the

spill under the following federal regulation:

> A transporter must clean up any hazardous waste discharge that occurs
> during transportation or take such action as may be required or approved by
> Federal, State, or local officials so that the hazardous waste discharge no
> longer presents a hazard to human health or the environment.

40 C.F.R. § 263.31.  Keller contends Wagner is in violation of this regulation

because Wagner is not, itself, taking any affirmative action to clean up the spill.

12

And Keller request injunctive relief under 42 U.S.C. § 6972(a)(1)(B) requiring

Wagner to comply with 40 C.F.R. § 263.31.  Specifically, Keller requests an

injunction requiring Wagner to "affirmatively take action by attending to the

cleanup and proper disposal of hazardous wastes from the gasoline spill" in

accordance with the existing cleanup plan approved by the EPA.  Under *Tyco*

*Thermal Controls*, these allegations sufficiently allege Wagner could be

compelled to either install additional remediation systems, to perform remediation

activities that Keller has not yet undertaken, or to completely take over

responsibility for continuing and completing remediation activities that Keller has

already commenced.  Wagner's motion is accordingly denied.

### 4.    Clean Water Act

#### a.    Subrogation

Wagner moves to dismiss Keller's claim for subrogation advanced under the

Clean Water Act at 33 U.S.C. § 1321(g).  In response, Keller represented that it

would dismiss that claim without prejudice, and it did not present any argument in

opposition to Wagner's motion to dismiss the claim.

In its First Amended Complaint, Keller has removed its claim for

subrogation under 33 U.S.C. § 1321(g).  Wagner complains, however, that Keller

has attempted to maintain a subrogation claim under the Clean Water Act, because

13

Keller alleges it is entitled to compensation from Wagner under 33 U.S.C. § 2715 — the subrogation provision of the Oil Pollution Act.  Dkt. 32 at ¶ 61.

For the reasons discussed above, Keller's subrogation claim under the Oil Pollution Act fails to state a claim upon which relief could be granted.  Therefore, to the extent Keller relies on section 2715 of the Oil Pollution Act as the legal basis for a right of subrogation under the Clean Water Act, Wagner's motion is well-taken and is granted.

### b.    <u>Contribution</u>

Keller alleges Wagner is liable under the Clean Water Act at 33 U.S.C. § 1321 for removal costs, damages and administrative penalties stemming from the gasoline spill.  Wagner counters that no basis exists under the Clean Water Act for this claim.  Wagner is correct and its motion to dismiss is appropriately granted.

Keller's allegations rely on a provision of the Clean Water Act which merely preserves claims for contribution that Keller may have under other legal theories.  Section 1321(h) states, in relevant part, as follows:

(h) Rights against third parties who caused or contributed to discharge

> The liabilities established by this section **shall in no way affect any rights** which (1) the owner or operator of a vessel or of an onshore facility or an offshore facility may have against any third party whose acts may in any way have caused or contributed to such discharge[.]

33 U.S.C. § 1321(h) (emphasis added).  Since the Clean Water Act establishes

14

liability and creates causes of action against entities that discharge oil or a hazardous substance in violation of the Act (*see e.g.* 33 U.S.C. § 1321(f) and (g)), the purpose and intent of 33 U.S.C. § 1321(h) is to dispel the notion that those statutorily created liabilities and causes of action "repeal by implication" any other existing remedy available against non-discharging third parties who contributed to, but were not the sole cause of the discharge.  *United States v. Bear Marine Services*, 509 F. Supp. 710, 718 (E.D. La. 1980).  Section 1321(h) merely "preserves the right of contribution in favor of a discharger against a third party whose fault contributed to the discharge."  *Bear Marine Services*, 509 F. Supp. at 716.  *See also In re The Complaint of Berkley Curtis Bay Co.*, 557 F. Supp. 335, 338-39 (S.D.N.Y. 1983) (recognizing that § 1321(h) preserves preexisting remedies available under other legal theories of recovery); and *Frederick E. Bouchard, Inc. v. United States*, 583 F. Supp. 477, 482 (D. Mass. 1984) (recognizing that § 1321(h) preserved the government's claims available under maritime tort law and the Refuse Act).

As such, section 1321(h) itself "is not the source of the right[]" to a claim for contribution.  *State of Colorado v. ASARCO, Inc.*, 608 F. Supp. 1484, 1491 n.4 (D. Colo. 1985).  The source of the right is, instead, some other right of action such as "the prevailing common law rule permitting contribution among joint

15

tortfeasors."  *Id*.  "Section 1321(h) does not *create* a right to contribution or indemnity."  *Mid-Valley Pipeline Co. v. S.J. Louis Construction, Inc.*, 2012 WL 208086, *4 (E.D. Kentucky 2012) (emphasis in original).  Consequently, a cause of action for contribution or indemnification may proceed only if state tort law or federal common law provides the cause of action, or if Congress affirmatively creates the right of action.  *Id*.

### B.   Wagner's Motion to Dismiss Keller's Contribution Claim Under the Oil Pollution Act

Keller claims it is entitled under the Oil Pollution Act at 33 U.S.C. § 2709 to recover from Wagner at least a portion of the removal costs, damages, and other payments and penalties that Keller has paid or will be required to pay due to the gasoline spill.

The state and federal courts have concurrent jurisdiction over a contribution claim under section 2709.  33 U.S.C. §§ 2709 and  2717(c).  Because concurrent jurisdiction exists for Keller's contribution claim, Wagner moves to dismiss the claim under authority of Mont. R. Civ. P. 13(a) on the grounds that it was a compulsory cross claim or counterclaim that Keller failed to plead in the pending state action.  Wagner's analysis is wrong.

As noted, in January of 2009, several homeowners impacted by the gasoline spill filed a lawsuit in the Twentieth Judicial District Court, Lake County,

Montana seeking compensation for removal costs and damages they sustained as a result of the fuel spill — *Kohler et al. v. Keller Transport, Inc. et al.*, Cause No. DV 09-1 ("Homeowner Litigation").  The plaintiffs in that action named both Keller and Wagner as defendants who, in turn, filed cross claims against each other.

Under Mont. R. Civ. P. 13(g), cross claims are permissive in nature — vesting a party with discretion to either assert any cross claim it may have against a coparty, or reserve it for later independent litigation.  *Whittaker v. Schreiner*, 570 P.2d 299, 301 (Mont. 1977).

However, once a party chooses to advance substantive cross claims against a coparty — as is the case here — coparties are realigned as "opposing parties" thereby triggering the provisions of the compulsory counterclaim rule at Mont. R. Civ. P. 13(a), infra.  *See Kirkcaldy v. Richmond County Board of Education*, 212 F.R.D. 289, 297-98 (M.D.N.C. 2002) (citing cases).[2]  *Cf. In re Retz*, 2008 WL

_____

[2]The parties have not identified, and the Court has not located any decisional law in Montana addressing circumstances where an answering coparty's cross claims could become compulsory counterclaims.  The provisions of Montana's compulsory counterclaim and cross claim rules at Mont. R. Civ. P. 13(a) and (g), respectively, are identical to those of the Federal Rules of Civil Procedure at Rules 13(a) and (g).  Where the language of a state procedural rule and a corresponding federal procedural rule is identical, the interpretation of the federal rule in the decisional law of the federal courts has persuasive application to the interpretation of the state rule.  *Faulconbridge v. State*, 142 P.3d 777, 788 (Mont. 2006) (citing *United States Fidelity and Guaranty Co. v. Rodgers*, 882

762186, *12 (Bankr. D. Mont. 2008) (concluding cross claims were not compulsory because the coparties were "not as yet opposing parties[]"). "Co-parties become opposing parties within the meaning of [the compulsory counterclaim rule] after one such party pleads an initial [substantive] cross-claim against the other." *Rainbow Management Group, Ltd. v. Atlantis Submarines Hawaii, L.P.*, 158 F.R.D. 656, 660 (D. Hawaii 1994). *See also City of Colton v. American Promotional Events, Inc.*, 2010 WL 4569038, *6-7 (C.D. Cal. 2010); *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 146 n.11 (3rd Cir. 1999) (reciting the rule in dicta); and *Hall v. General Motors Corp.*, 647 F.2d 175, 184 and n.37 (D.C. Cir. 1980).[3]

Wagner's cross claims for breach of contract, indemnification, breach of the implied covenant of good faith and fair dealing, and fraud are all substantive in nature which triggered application of the compulsory counterclaim rule at Mont. R. Civ. P. Rule 13(a), infra.

─────────────────

P.2d 1037, 1039 (Mont. 1994)).

[3]The realignment of coparties as opposing parties, however, is triggered only when the initial cross claims are substantive claims for relief against a coparty, as opposed to mere claims for contribution and indemnification advanced by a co-defendant. *Rainbow Management Group, Ltd.*, 158 F.R.D. at 660; *Kirkcaldy*, 212 F.R.D. at 298.

Montana Rule of Civil Procedure Rule 13(a) provides:[4]

**(a) Compulsory Counterclaim.**

(1) *In General*.  A pleading must state as a counterclaim any claim that--<u>at the time of its service</u>--the pleader has against an opposing party if the claim:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.

Mont. R. Civ. P. 13(a) (emphasis added).

In response to Wagner's cross claims in the Homeowner Litigation, Keller filed three counter cross claims but did not plead its claim for contribution under the Oil Pollution Act at 33 U.S.C. § 2709 in the Homeowner Litigation.  But contrary to Wagner's argument, Keller's claim for contribution under the Oil Pollution Act was not compulsory within the meaning of Rule 13(a).

Keller correctly argues that because of the "presentment" requirements of the Oil Pollution Act, it did not have its contribution claim "at the time" it served its counterclaim in the Homeowner Litigation.

The Oil Pollution Act requires that all claims for removal costs or damages

---

[4]The issue of whether a party's claims are compulsory counterclaims that should have been pled in an earlier state court action is a question of state law. *Springs v. First National Bank of Cut Bank*, 835 F.2d 1293, 1295 (9th Cir. 1988).

against a responsible party must first be presented to the responsible party before an action is commenced in court.  33 U.S.C. § 2713(a) and (c).  *See Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (concluding, in dicta, that contribution claims under 33 U.S.C. § 2709 are included among the Oil Pollution Act claims that must first be presented to a responsible party as required under 33 U.S.C. § 2713).  If the responsible party denies liability for the claim, or if the claim is not settled by payment within 90 days after presenting the claim to the responsible party, then the claimant may commence an action in court against the responsible party.  33 U.S.C. § 2713(c)(1) and (2).

A plaintiff's failure to comply with the presentment requirements of 33 U.S.C. § 2713 subjects the plaintiff's Oil Pollution Act claims to dismissal. Although the Ninth Circuit Court of Appeals has not addressed the bar imposed by the presentment requirements, the federal courts that have addressed the issue have concluded that the presentment requirements are jurisdictional conditions precedent to filing an Oil Pollution Act claim in court, and a plaintiff's failure to comply with the requirements mandates dismissal of the claims.  *Russo v. M/T Dubai Star*, 2010 WL 1753187, *2-3 (N.D. Cal. 2010) (citing *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.*, 51 F.3d 235, 240 (11th Cir.1995); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476, 477 (E.D. La. 1996);

20

*Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993); and

*Abundiz v. Explorer Pipeline Co.*, 2003 WL 23096018, *5 (N.D. Tex. 2003)).

Due to the presentment requirement in 33 U.S.C. § 2713(c), Keller's Oil

Pollution Act contribution claim under section 2709 was not a claim that Keller

had at the time it filed its counterclaims against Wagner in the Homeowner

Litigation. Keller asserts that the first time it presented its section 2709

contribution claim for removal costs and damages to Wagner was on September 8,

2010, when it filed its answer and counterclaims against Wagner. Wagner does

not dispute that Keller had not presented the claim prior to that date. In fact,

Wagner had moved to dismiss Keller's Oil Pollution Act claims from this action

based on Keller's failure to present those claims as required under 33 U.S.C. §

2713(a) and (c). Dkt. 12 at 5-7. Consequently, Keller could not have commenced

an action on its Oil Pollution Act contribution claim under 33 U.S.C. § 2709 until

90 days after September 8, 2010. Thus, Keller did not have that claim by

September 8, 2010, when its served its answer and counterclaim pleading against

Wagner as required to qualify as a compulsory counterclaim under Mont. R. Civ.

P. 13(a).

When a party's counterclaim matures after the party files its pleading under

Rule 13(a), "the counterclaim is not considered compulsory although it may arise

from the same transaction or occurrence as the opposing party's claim[,]" and it is not subject to dismissal for failure to plead the claim at the time the initial Rule 13(a) pleading is served. *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 689 (E.D. Cal. 2009) (citing *Young v. City of New Orleans*, 751 F.2d 794, 800 (5th Cir. 1985)).[5] *See also Stone v. Department of Aviation*, 453 F.3d 1271, 1276 (10th Cir. 2006) (interpreting nearly identical provisions of Fed. R. Civ. P. 13(a) and Colo. R. Civ. P. 13(a)). "An after-acquired claim is not considered a compulsory counterclaim under Fed. R. civ. P. 13(a), and failure to interpose it will not bar its assertion in a later lawsuit." *Johnson v. Con-Vey/Keystone, Inc.*, 856 F. Supp. 1443, 1450 (D. Or. 1994). Therefore, as a matter of law, Keller's contribution claim under the Oil Pollution Act was not a compulsory counterclaim under Rule 13(a).[6]

## C.   **Wagner's Motion to Stay**

In the alternative to its motions to dismiss, Wagner takes the position the

---

[5]Again, because the text of Mont. R. Civ. P. 13(a) is identical to that of Fed. R. Civ. P. 13(a), the interpretation of the federal rule has persuasive application to the interpretation of the state rule. *Faulconbridge*, 142 P.3d at 788 (citing *United States Fidelity and Guaranty Co.*, 882 P.2d at 1039).

[6]That a subsequently matured or acquired counterclaim is not compulsory is further supported by Mont. R. Civ. P. 13(e) (stating that a party may be permitted to "file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading").

Court should stay these proceedings under the *Colorado River* abstention doctrine. The Court is unpersuaded.

The United States Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) addressed "the problem posed by the contemporaneous exercise of concurrent jurisdiction by state and federal courts." *Smith v. Central Arizona Water Conservation District*, 418 F.3d 1028, 1032 (9th Cir. 2005). Generally, "federal courts possess a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 977 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817). Therefore, it is only in rare cases where "'the presence of a concurrent state proceeding' [will] permit the district court to dismiss a concurrent federal suit 'for reasons of wise judicial administration[]' [...] giving regard to conservation of judicial resources and comprehensive disposition of litigation[.]" *R.R. Street & Co. Inc.*, 656 F.3d at 977-78 (quoting *Colorado River*, 424 U.S. at 817-18). Abstention under *Colorado River*, however, is limited to "'exceptional' cases, and only [where] 'the clearest of justifications' support dismissal[ or abstention]." *Id*. at 978 (quoting *Colorado River*, 424 U.S. at 818-19).

In determining whether a particular case presents exceptional circumstances

warranting a stay or dismissal under *Colorado River*, the "court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'"  *R.R. Street & Co. Inc.*, 656 F.3d at 978 (quoting *Colorado River*, 424 U.S. at 818).  Based on the United States Supreme Court's decisions in *Colorado River* and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), the Ninth Circuit Court of Appeals has identified the following eight factors to consider in assessing the propriety of a stay or dismissal:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. Street & Co. Inc.*, 656 F.3d at 978-79.  If there is any doubt as to whether a particular factor weights in favor of, or against a stay or dismissal, the factor should be resolved against staying or dismissing an action.  *R.R. Street & Co. Inc.*, 656 F.3d at 979.

The first two factors do not affect the Court's decision under the circumstances of this case.  This case does not involve rights to any piece of property.  Also, the parties have not presented any argument regarding whether

this forum or the state court forum would be more or less convenient.  The Court

will proceed to consider the six remaining factors.

### 1.    Piecemeal Litigation

The existence of concurrent actions in different tribunals addressing the

same issues presents a risk that there will be a duplication of efforts that could

possibly reach different results.  *R.R. Street & Co. Inc.*, 656 F.3d at 979.  This

factor alone, however, is insufficient to warrant a stay of the federal action unless

there exists a "special concern about piecemeal litigation [...] which can be

remedied by staying or dismissing the federal proceeding."  *Id*. (citations and

quotations omitted).

Although Wagner contends the parties would engage in a duplication of

effort to address the same issues in both this action and the Homeowner Litigation,

Wagner does not identify any aspect of the two cases that could reach different

results that would be avoided by a stay of this action.  Keller's claims in the

Homeowner Litigation are advanced solely under Montana law, whereas its

surviving claims in this action are predicated upon uniquely distinct federal laws.

If a different result is reached in the two cases, it would only be by virtue of the

application of different laws, not following the application of the same laws.  This

factor weighs against staying this action.

25

### 2.       Order of Jurisdiction

The Twentieth Judicial District Court, Lake County — in the Homeowner Litigation — first acquired jurisdiction over the same subject matter that is involved in this action.  Although this factor would weigh in favor of this Court staying its hand, it carries little weight since Keller pleaded only federal claims here, while only state law claims are at issue in the Homeowner Litigation.

### 3.       Source of Law

Federal law provides the rule of decision on the merits of Keller's claims pled in this case, whereas Montana law provides the rule of decision on the merits of Keller's claims asserted in the Homeowner Litigation.  The presence of federal law issues in this case weighs against a stay.  *R.R. Street & Co. Inc.*, 656 F.3d at 980.

### 4.       Adequacy of State Court Proceedings

This Court has exclusive jurisdiction over Keller's claim for injunctive relief under the Resource Conservation and Recovery Act.  42 U.S.C. § 6972(a). Keller would not be able to raise that claim in the Homeowner Litigation and the state court would not be able to address that claim.  Therefore, a stay of this action would be inappropriate.  *R.R. Street & Co. Inc.*, 656 F.3d at 981.

### 5.   Forum Shopping

Forum shopping refers to the practice of a litigant in choosing a more favorable court in which a claim can be heard.  *R.R. Street & Co. Inc.*, 656 F.3d at 981.  The court may consider the vexatious or reactive nature of a subsequent lawsuit commenced in either federal or state court in deciding whether remedial action is necessary to prevent forum shopping.  *Id*.  A stay may be appropriate if it is apparent that the federal plaintiff engaged in forum shopping.  *Id*.

There exists no indication in the record before the Court establishing that Keller acted vexatiously by filing this action, or that it commenced this action in reaction to some adverse circumstance surrounding the Homeowner Litigation. Other than speculation, there is no reason to believe Keller engaged in forum shopping.  Thus, this factor weighs against a stay.

### 6.   Full Resolution of all Issues in State Court

The Court must consider whether this action and the Homeowner Litigation are sufficiently parallel such that all of Keller's federal claims can be resolved in the state court litigation.  *R.R. Street & Co. Inc.*, 656 F.3d at 982.  "'The existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes' a *Colorado River* stay or dismissal."  *Id*. (quoting *Smith v. Central Arizona Water Conservation District*, 418 F.3d 1028, 1033 (9th Cir. 2005)

27

and *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993)).

The courts must assess the weight of this factor based on the state of affairs "at the

time of the *Colorado River* analysis." *R.R. Street & Co. Inc.*, 656 F.3d at 982.

Keller's First Amended Complaint sufficiently states a claim for injunctive

relief under the Resource Conservation and Recovery Act over which this Court

has exclusive jurisdiction.  42 U.S.C. § 6972(a).  This factor weighs heavily in

favor of this Court exercising jurisdiction.

Having considered its obligation to exercise jurisdiction balanced against

the factors identified under the *Colorado River* abstention doctrine, the Court is

firmly convinced that a stay of this action would not be appropriate.

## III.   CONCLUSION

IT IS HEREBY ORDERED that Wagner's Fed. R. Civ. P. 12(b)(6) motion

to dismiss is GRANTED as to:  (1) Keller's subrogation claim under the Oil

Pollution Act at 33 U.S.C. § 2715(a); (2) Keller's contribution claim under the

Resource Conservation and Recovery Act at 42 U.S.C. § 6972(f); (3) Keller's

subrogation claim advanced in its Clean Water Act claim; and (4) Keller's

contribution claim under the Clean Water Act at 33 U.S.C. § 1321(h). Those

claims are DISMISSED.  But Wagner's motion is DENIED with respect to

Keller's claim for injunctive relief under the Resource Conservation and Recovery

Act at 42 U.S.C. § 6972(a).  Wagner's motion for recovery of its attorneys' fees under Fed. R. Civ. P. 41(d) is also DENIED.

IT IS FURTHER ORDERED that Wagner's separate motion to dismiss Keller's contribution claim advanced under the Oil Pollution Act at 33 U.S.C. § 2709 is DENIED, and its alternative motion to stay these proceedings pending resolution of the parties' claims pled in the Homeowner Litigation is DENIED.

DATED this 6th day of June, 2012.

 /s/ Jeremiah C. Lynch

Jeremiah C. Lynch
United States Magistrate Judge